UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BABATUNDE OLADIPO, *on behalf of himself and all others similarly situated*,

                    Plaintiff,

            -against-

CARGO AIRPORT SERVICES USA, LLC,

                    Defendant.
-----------------------------------------------------------X

**MEMORANDUM
AND ORDER**
16 CV 6165 (CLP)

**POLLAK**, United States Magistrate Judge:

On September 21, 2016, plaintiff Babatunde Oladipo ("plaintiff") commenced this class action and collective action on behalf of himself and others similarly situated against defendant Cargo Airport Services USA, LLC ("defendant" or "Cargo"), alleging that defendant failed to pay its employees proper straight time and overtime wages, in violation of the New York Labor Law § 190 et seq. and § 650 et seq. ("NYLL"), and supporting regulations in the New York Codes, Rules and Regulations ("NYCRR"). (See generally Compl.[1]).

Presently before this Court is plaintiff's unopposed motion requesting: (1) an Order granting preliminary approval of the proposed settlement as set forth in the Joint Settlement Agreement and Release (the "Settlement Agreement"); (2) conditional certification of the proposed class for settlement purposes; (3) approval of the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (the "Notice"); 4) approval of the proposed schedule for final settlement approval and an Order scheduling a date for the Fairness Hearing; and 5) appointment of plaintiff's counsel, the Law Firm of Louis Ginsberg, P.C. as Class Counsel.

---

[1] Citations to "Compl." refer to plaintiff's First Amended Complaint, filed September 21, 2016, ECF No. 1.

(Pl.'s Mem.[2] at 1).  For the reasons set forth below, the Court grants plaintiff's motion in its entirety.[3]

FACTUAL BACKGROUND

Plaintiff Oladipo was employed by defendant Cargo Airport Services USA, LLC as a cargo agent at John F. Kennedy International Airport from approximately October 26, 2007 until August 2016.  (Compl. ¶¶ 1, 17).  Plaintiff alleges that at all relevant times, defendant Cargo was an "employer" within the meaning of all applicable statutes.  (Id. ¶ 1).  Plaintiff alleges that he and similarly situated members of the Settlement Class, employed as cargo agents during the class period commencing six (6) years prior to the filing of the Complaint on September 21, 2016, were not properly compensated for work they were required to perform during meal breaks and prior to the start of their shift, were not paid overtime for all hours worked over 40 in a week, and were not provided with accurate wage statements.  (Id. ¶ 2).  Plaintiff brings claims on behalf of a class consisting of:

> All current and former Cargo Agents, aka Office
> Or Traffic Agents, who were employed by Cargo
> Airport Services USA, LLC or any parent,
> Subsidiary, predecessor or successor, in cargo
> Buildings 9, 66, 73, 76, 78, and 151 at JFK Airport
> in the State of New York, at anytime from
> September 20, 2010 through the date of the
> Preliminary Approval.

("Settlement Class").  (See Ginsberg Decl.[4] ¶ 17).

---

[2] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in Support of Preliminary Approval of Class Wide Settlement, filed January 31, 2019, ECF No. 51.

[3] On February 6, 2019, the parties consented to the undersigned for all purposes.  (See Order dated February 6, 2019, ECF No. 53).

[4] Citations to "Ginsberg Decl." refer to the Declaration of Louis Ginsberg, Esq., In Support of Preliminary Approval of Class Action Settlement, dated January 30, 2019, ECF No. 51.

Following service of the initial Complaint in Supreme Court, Queens County, defendant removed the action to this Court on November 4, 2016. In the Notice of Removal, defendant asserts that federal jurisdiction is predicated on the fact that plaintiff is a member of the Transport Union Workers of America and that Cargo is a signatory to a collective bargaining agreement ("CBA") that was in effect during plaintiff's employment and that sets forth the rights and obligations of plaintiff and similarly situated persons. (Not.[5] ¶ 4(c) – (d)). Since plaintiff is essentially alleging violations of the CBA, the Court has federal question jurisdiction over the claims, pursuant to 28 U.S.C. § 1331. (Id. ¶ 5). See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985) (noting that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States . . . .") (citing 29 U.S.C. § 185(a)).

Following removal to this Court, the parties engaged in discovery, with Class Counsel serving initial disclosures, reviewing defendant's initial disclosures, serving seven sets of document requests, two sets of interrogatories, and conducting a review of the defendant's responses. (Ginsberg Decl. ¶ 5). On February 7, 2017, Class Counsel responded to the discovery requests served by defendant, including Defendant's First Request for Production of Documents and First Set of Interrogatories). (Id. ¶¶ 6, 7). In February 2017, defendant produced the pay and time records for the named plaintiff and thereafter, in June 2017 began producing a sample of pay and time records for approximately 10% of the Class. (Id. ¶ 8). Upon receiving these records, Class Counsel undertook numerous analyses in an effort to calculate the damages

---

[5] Citations to "Not." Refer to the Notice of Removal filed on November 4, 2016, ECF No. 1.

owed to plaintiff and to other Cargo Agents in the Class.  (Id.)  Counsel also prepared documents relating to the clock-in and clock-out times of the Class Members, the amount of time for which they were paid, and whether the time clocks were rounding for or against the Class Members.  (Id.)

Class Counsel engaged in numerous conferences with defendant's counsel and participated in a mediation on February 6, 2018 before JAMS Mediator Robin H. Gise, Esq.  (Id. ¶¶ 9, 10).  In preparation for the mediation, counsel prepared a detailed mediation statement with exhibits, and analyzed and prepared a summary of damages for the Class.  (Id. ¶ 10).  The attorneys also participated in two mediations before the undersigned on June 27, 2018 and then on September 12, 2018.  (Id. ¶¶ 11, 12).  Following the second session, it appeared that a settlement had been reached but then additional negotiations were required over the next four months before a final agreement was reached in mid-January 2019.  (Id. ¶ 12).  Class Counsel thereafter drafted the Settlement Agreement and submitted the papers in connection with this motion for Preliminary Approval.  (Id.)

A.  Settlement Agreement

After discovery and mediation, the parties agreed to settle the action on a class wide basis.  The proposed settlement covers "all current and former Cargo Agents, aka Office Of Traffic Agents, who were employed by Cargo Airport Services USA, LLC or any parent, Subsidiary, predecessor or successor, in cargo Buildings 9, 66, 73, 76, 78, and 151 at JFK Airport in the State of New York, at anytime from September 20, 2010 through the date of the Preliminary Approval."  (See Ginsberg Decl. ¶ 17).  The Agreement creates a gross settlement sum of $200,000 to compensate the approximately 600 Class Members for their unpaid wage

claims, and includes an award to the Named Plaintiff, a fee for the third-party administrator, and attorneys' fees and costs. (Id. ¶ 13; see also Pl.'s Mem. at 6 and 20; see also Sett. Agr. §§ 4.1(A), 4.2, 4.3). The Class Notice directs members who "choose to participate in the settlement" to "do nothing" (Class Notice[6] at 1) and they will receive a payment calculated by dividing the Class Member's gross earnings into the total of all Qualified Class Members'[7] earnings and multiplying the resulting percentage by the Net Settlement Amount[8] to reflect their length of employment and percentage of earnings relative to the Class. (Sett. Agr. § 4.4). The Settlement is non-reversionary; if any Class Members opt out, their share of the Settlement shall be distributed to the Class Members according to the formula set forth above. Any uncashed checks will be divided as follows: 75% shall be returned to the defendant with the remaining 25% donated to a 501(c)(3) organization. (Id. § 4.1(A)).

The Settlement Agreement contemplates that Class Counsel will file a motion for an award of attorney's fees, equal to 33.33% of the Settlement Amount, which equals $66,660.00, plus reasonable litigation costs and expenses. (Pl.'s Mem. at 10; see also Sett. Agr. § 4.2). Plaintiff will move separately for attorney's fees and costs in connection with their motion for final settlement approval. (Pl.'s Mem. at 5).

In addition, the Named Plaintiff, Babatunde Oladipo, will seek to receive a Service Award of $5,000, in recognition of the services he rendered on behalf of the Class. These

---

[6] Citations to "Class Notice." refer to the Class Notice, filed January 31, 2019, ECF No. 51.

[7] "Qualified Class Member" is defined as "any Class Member who does not opt out." (Sett. Agr. §1.22).

[8] "Net Settlement Amount" is defined as the "remainder of the Gross Settlement Payment after deducting: (a) the Court-approved attorney's fees and costs awards . . .and (b) the Court-approved service payment to Plaintiff,. . . and (c) payment to the Claims Administrator." (Sett. Agr. § 1.17).

services include attending the three mediations, participating in conferences with plaintiff's counsel, and producing documents. (Pl.'s Mem. at 10). In addition, a fee will be deducted from the Settlement Fund to compensate the third-party claims administrator. (Ginsberg Decl. ¶ 15).

The parties propose the following schedule: 1) within 20 business days of an Order of Preliminary Approval of the Settlement, defendant will provide the Settlement Administrator with a list of Class Members, their contact and wage information necessary to calculate each member's settlement amount; 2) within 10 days after receiving the contact and wage information, the Administrator shall mail the Notice to Class Members; 3) Class Members then have 30 days from the date of the mailing of the Notice to opt-out, and to file any objections to the Settlement with the Court; 4) a final fairness hearing will be held and if approved, the Court will issue a Final Approval Order. (Pl.'s Mem. at 12; see also Sett. Agr. §§ 3.4 (A), (B), 3.5 (A), 3.8).

## DISCUSSION

### A. Rule 23 Class Certification

Plaintiff moves pursuant to Federal Rule of Civil Procedure 23 for certification, for purposes of settlement, of a class consisting of all current and former Cargo Agents employed at various cargo buildings at JFK Airport from September 20, 2010 through the date of Preliminary Approval.

#### 1. Legal Standards

Rule 23(a) of the Federal Rules of Civil Procedure governs class certification, providing:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class

> is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to satisfying these prerequisites, plaintiff also must satisfy one of the three subdivisions of Rule 23(b): (1) that separate actions pose a risk of inconsistent adjudications or would substantially impair the ability of other individuals to protect their interests; (2) injunctive or declaratory relief is sought concerning the class as a whole; or (3) common questions of law or fact predominate over individual questions, and a class action is superior to other methods for bringing suit. Fed. R. Civ. P. 23(b). See generally Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997); Annunziato v. Collecto, Inc., 293 F.R.D. 329, 334 (E.D.N.Y. 2013). It is plaintiff's burden to establish compliance with each of the requirements of Rule 23 by a preponderance of the evidence, In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013), but in analyzing the issue of certification, the court accepts as true the allegations in the complaint regarding the merits of the claim. See D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996) (citation omitted). While courts are required to conduct a "rigorous" analysis, Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 465-66 (2013), the court may exercise "broad discretion" and "take a liberal rather than a restrictive approach" when reviewing whether to certify a class. Annunziato v. Collecto, Inc., 293 F.R.D. at 334.

Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." Collier v. Montgomery Cty Hous. Auth., 192 F.R.D. 176, 181 (E.D. Pa. 2000). For purposes of settlement only, defendants do not oppose conditional

certification.  (See Mem. at 20); see also 4 Alba Conte, et al., Newberg on Class Actions § 11.27 (4th ed. 2002) (providing "[w]hen the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only").

      2.   The Requirements of Rule 23(a)

      (a) Numerosity

Turning to the Rule 23(a) factors, the court may certify a class only if the class is so numerous that joinder becomes impractical.  Fed. R. Civ. P. 23(a)(1).  The standard for presuming numerosity is 40 or more members.  Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

In this case, there are approximately 600 potential Class Members, which is more than sufficient for numerosity.  (Pl.'s Mem. at 20).  Thus, the allegations in the Complaint clearly satisfy the standard of numerosity.

      (b) Commonality

In determining whether plaintiff can show that the claims of the potential Rule 23 Class Members share common questions of law or fact, the Rule does not require that "'all questions of law or fact raised be common.'"  Savino v. Computer Credit, Inc., 173 F.R.D. at 352 (emphasis in original) (quoting Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. 13, 18 (W.D.N.Y. 1995)).  As long as "common questions . . . predominate," any differences in the circumstances raised by individual members will not defeat the requirement of commonality.  In re Sadia, S.A. Sec. Litig., 269 F.R.D. 298, 304 (S.D.N.Y. 2010).  In other words, "there need only be a single issue common to all members of the class," as the "critical inquiry is whether the common

questions lay at the 'core' of the cause of action alleged." <u>Savino v. Computer Credit, Inc.</u>, 173 F.R.D. at 352.

Here, there are several common legal and factual issues. More specifically, the class members all worked at JFK Airport, and all were arguably subject to the same wage practices and policies, including the same time rounding practice. (Pl.'s Mem. at 20). The claims involve whether defendants improperly failed to pay them pre-shift and post-shift wages. (<u>Id.</u>)

As such, the Court finds that there are common legal and factual issues sufficient to satisfy the requirements of Rule 23(a)(2).

  (c) <u>Typicality</u>

Rule 23(a)(3) requires that the lead plaintiff's claims be typical of the claims of the class. Typicality has been found "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." <u>Robidoux v. Celani</u>, 987 F.2d at 936. Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representative are typical of the Class Members' claims. <u>Bourlas v. Davis Law Assocs.</u>, 237 F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting <u>D'Alauro v. GC Servs. Ltd. P'ship</u>, 168 F.R.D. at 456-57).

Here, the claims of plaintiff satisfy the requirements of the Rule in that he, like other members of the proposed Class, alleges claims based on the same legal and factual circumstances that form the bases of the Class Members' claims. Specifically, plaintiff alleges that defendant: (1) used the same wage practices and policies with all putative Class Members; (2) failed to pay wages for pre-shift and post-shift work; and 3) automatically deducted time from meal breaks which resulted in Class Members not receiving pay even when they performed

work during meal breaks.  (Pl.'s Mem. at 21).  Plaintiff's claims are therefore sufficiently typical to warrant certification.

(d) Adequacy of Representation

In order to satisfy Rule 23(a)(4), which requires the interests of the class to be adequately represented, the Second Circuit has established a two-prong test.  In re Drexel Burnham Lambert Grp., 960 F.2d 285, 291 (2d Cir. 1992).  First, there must be a showing that class counsel is "'qualified, experienced and generally able' to conduct the litigation."  Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. at 19 (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968), vacated on other grounds, 417 U.S. 156 (1974)).  Second, the Class Members' interests may not be "'antagonistic'" to one another.  County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989), aff'd, 907 F.2d 1295 (2d Cir. 1990).

Pursuant to Fed. R. Civ. P. 23(g), the Court must assess the adequacy of proposed Class Counsel, looking to the work counsel has done in identifying and investigating the potential claims, counsel's experience in handling class actions and claims of the type at issue in the case, and counsel's knowledge of the applicable law.  See Fogarazzo v. Lehman Bros., Inc. 232 F.R.D. 176, 182 (S.D.N.Y. 2005); see also In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 436 (S.D.N.Y. 2008) (stating:  "'(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation'") (quoting Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 412-13 (S.D.N.Y. 2004)); Babcock v. Computer Assocs. Int'l, Inc., 212 F.R.D. 126, 131 (E.D.N.Y.

2003) (quoting <u>In re Drexel Burnham Lambert Grp., Inc.</u>, 960 F.2d at 291). The Court should also consider the resources that counsel is able to commit in representing the Class.

Here, the proposed Class has been represented by Louis Ginsberg, head of the Law Firm of Louis Ginsberg, P.C. (Ginsberg Decl. ¶ 1). He represents that he is "well-versed in wage and hour and class action law," and that he has previously been appointed as Class Counsel in similar class actions. (<u>Id.</u> ¶ 23). He states that in 2017, he was appointed as class counsel four times. (<u>Id.</u>) He graduated from the University of Chicago Law School in 1987, and has practiced in the area of employment law and litigation for 30 years. (<u>Id.</u> ¶ 24). Thus, he knowledgeable as to the substantive law at issue and is well-qualified to represent the interests of the Class.

Since the inception of this case, plaintiff's attorney has demonstrated to this Court his ability to prosecute this case diligently and to represent the interests of the potential Rule 23 Class, as shown by the extensive effort that he engaged in to settle this action on behalf of all Class Members. Based on the legal experience of the attorney involved in this case, particularly his extensive experience in similar cases, the Court agrees that Class Counsel is "well-qualified to serve as lead counsel in this matter." <u>In re Fuwei Films Sec. Litig.</u>, 247 F.R.D. at 439.

Second, the Named Plaintiff does not have any interests that are antagonistic to or at odds with those of Class Members, and his interests are aligned with those of the other Class Members. (Pl.'s Mem. at 21-22). In order for a potential or actual conflict to defeat certification, it "must be fundamental." <u>In re Flag Telecom Holdings, Ltd. Sec. Litig.</u>, 574 F.3d 29, 36 (2d Cir. 2009) (internal quotation marks and citations omitted). There is no evidence that the interests of the Named Plaintiff are antagonistic to those of the Class Members, and the Court is unaware of any potential, fundamental conflict of interest between plaintiff and the Class Members. Based on the nature of plaintiff's claims, the Court finds that the Named Plaintiff's

claims are so interrelated with those of the other potential Rule 23 Class Members that he will be an adequate class representative.

   3.   The Requirements of Rule 23(b)(3)

       (a)  Common Questions Predominate Over Individual Issues

Plaintiff must also establish that the proposed class meets the requirements of Fed. R. Civ. P. 23(b)(3).  Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and common issues must predominate in order to warrant adjudication as a class.  Amchem Prods, Inc. v. Windsor, 521 U.S. at 623.  Courts focus on whether there are common questions related to liability.  See Smilow v. Southwest Bell Mobile Sys. Inc., 323 F.3d 32, 40 (1st Cir. 2003); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 372-73 (S.D.N.Y. 2007).  Even if there are defenses that affect Class Members differently, that alone "does not compel a finding that individual issues predominate over common ones."  In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 138 (2d Cir. 2001) (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000)), overruled on other grounds, In re IPO Secs. Litig., 471 F.3d 24 (2d Cir. 2006).

In this case, plaintiff allege that there are common issues as to whether non-exempt hourly paid Cargo Agents were subject to the same unlawful time rounding policy that caused them to perform certain pre-shift and post-shift work without compensation.  (Pl.'s Mem. at 23). Generalized proof, is therefore, more than sufficient to determine Cargo's liability, satisfying the predominance requirement.  (Id. at 23-24).  Since the Class Members' core factual allegations and legal theories predominate over any factual or legal variations among Class Members, the

Court finds that common questions predominate in this case and plaintiff has therefore satisfied

Rule 23(b)(3). <u>See</u> <u>Torres v. Gristede's Corp.</u>, 2006 WL 2819730 at *16)).


(b) <u>Class Action as Superior Method of Resolution</u>

Additionally, to satisfy Rule 23(b)(3), plaintiff must demonstrate that "a class action

would achieve economies of time, effort, and expense, and promote uniformity of decision as to

persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable results." <u>Brown v. Kelly</u>, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal

quotation marks omitted). The Rule requires the Court to consider:

> [(1)] the class members' interests in individually controlling the
> prosecution or defense of separate actions; [(2)] the extent and
> nature of any litigation concerning the controversy already begun by
> or against class members; [(3)] the desirability or undesirability of
> concentrating the litigation of the claims in the particular forum; and
> [(4)] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, plaintiff claims that because Settlement Class Members have limited financial

resources, the expense and burden of individual litigation would make it impossible for "all of

them to individually redress the alleged harm done to them." (Pl.'s Mem. at 24) (citing <u>Morris v.</u>

<u>Affinity Health Plan, Inc.</u>, 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012). In addition, proceeding as

a class will preserve judicial resources by consolidating common issues of fact and law, and

avoid repetitive proceedings and inconsistent adjudications. (<u>Id.</u>); <u>see</u> <u>Aponte v. Comprehensive</u>

<u>Health Mgmt</u>, No. 10 CV 4825, 2011 U.S. Dist. LEXIS 60882, at *35 (S.D.N.Y. June 2, 2011).

As a result, the Court accepts that a class action is the superior method of resolution in this case.

B.  Preliminary Approval of the Class Settlement

Plaintiff seek preliminary approval of the proposed settlement, as memorialized in the Settlement Agreement.

1.  Legal Standards

To grant preliminary approval of a class settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see Fed. R. Civ. P. 23(e).  Judicial policy favors the settlement and compromise of class actions.  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116-17 (2d Cir. 2005); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).  Whether a settlement is fair is a determination within the sound discretion of the court.  Levitt v. Rodgers, 257 Fed. App'x 450, 453 (2d Cir. 2007) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).

Generally, approval of a class action settlement involves a two-step process:  first, the court preliminarily approves the proposed settlement by evaluating the written submissions and informal presentation of the settling parties and the negotiating process leading to the settlement, Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d at 116; and second, the court holds a fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable. . ." Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012).  In evaluating a proposed settlement in order to grant preliminary approval, the court need only find that there is "probable cause" to submit the settlement to the Class Members and to

hold a fairness hearing. Hernandez v. Merrill Lynch & Co., No. 11 CV 8471, 2012 WL

5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (quoting In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d

631, 634 (2d Cir. 1980)).

For procedural fairness, the court must determine if the settlement was "achieved through

arms-length negotiations by counsel with the experience and ability to effectively represent the

class's interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999)

(citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche

Bank, 236 F.3d at 85 (noting that the district court must "determine[] a settlement's fairness by

examining the negotiating process leading up to the settlement as well as the settlement's

substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013

WL 4080946, at *4 (S.D.N.Y. May 30, 2013). In reviewing a proposed settlement, the court has

the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and

that the class members' interests [were] represented adequately.'" Clement v. Am. Honda Fin.

Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner

Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

For substantive fairness, the Second Circuit has enumerated nine factors to guide courts

in evaluating a proposed settlement:

> (1) [T]he complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; and (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant
> risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001); Garcia v. Pancho Villa's of Huntington Village, No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012). Although the Court is not required to make a finding of fairness as to the underlying settlement at this time, the Grinnell factors are instructive. See Torres v. Gristede's Operating Corp., Nos. 04 CV 3316, 08 CV 8531, 08 CV 9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (noting that "[p]reliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties") (internal quotation marks and citations omitted).

2. Analysis of Procedural Fairness

Plaintiff represents that the proposed settlement was entered into only after plaintiff's counsel "thoroughly investigated and researched the relevant facts and law over a period of 2.5 years," reviewing "substantial amounts of discovery." (Pl.'s Mem. at 15). This included interviewing the Named Plaintiff and reviewing the responses of defendant to 7 separate sets of discovery requests, and records of Cargo, including samplings of time cards, time and attendance and employee punch history records, and check listing records of plaintiff and Class Members. (Id.) In addition, the parties engaged in arms-length settlement negotiations through a JAMS mediator, after which the parties engaged in several additional rounds of settlement discussions, including two mediations sessions with the undersigned Magistrate Judge. (Id.) Although these negotiations were initially unsuccessful, after months of arms-length discussions, the parties reached an agreement in principle. (Id.)

16

Given the presumption of fairness when a class settlement has been reached after "arm's-length negotiations between experienced, capable counsel after meaningful discovery," see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116, the Court finds that the process of reaching the proposed settlement in this case was procedurally fair.

3. Analysis of Substantive Fairness

(a) Complexity, Expense, and Likely Duration of the Litigation

Turning to the Grinnell factors, the parties "seek to avoid significant expense and delay" that would result from continuing litigation. With approximately 600 Class Members involved, the number of factual and legal claims in the case makes it clear that trial in the case would be complex. See Romero v. La Revise Assocs., L.L.C., 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (finding in an FLSA and NYLL lawsuit that "the large number of class members and the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive"); Garland v. Cohen & Krassner, No. 08 CV 4626, 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011) ("Given the complexity of any class action lawsuit . . . it is reasonable to assume that absent the instant Settlement, continued litigation would have required extensive time and expense").

Indeed, in the absence of a settlement, this case would require a substantial expenditure of money and time by both parties in pursuing this litigation. First, if the case had not settled, there would have been extensive motion practice; the motion for class certification would have been "hard fought and highly contested." (Pl.'s Mem. at 18). In addition, there was a risk that defendant could have moved for and succeeded at a motion for summary judgment. (Id.) A trial in this matter would consume tremendous time and resources and, even assuming plaintiff were

successful in establishing defendants' liability at trial, there is always the potential for an appeal, which would inevitably produce delay and increase costs to all parties. Thus, this factor of potential protracted litigation favors settlement.

(b)  <u>Reaction of Class to Settlement</u>

Notice of the Settlement has not yet been issued to the Class Members. "The reaction of the class to the settlement is an issue that can be addressed only after notice of the proposed Stipulation has been sent to the Class and the time for objections has passed. Since notice of the settlement has not been distributed to the potential Rule 23 Class members, the Court need not address this issue at this time." <u>Caballero by Tong v. Senior Health Partners, Inc.</u>, No. 16 CV 326, 2018 WL 4210136 at *11 (E.D.N.Y. September 4, 2018).

(c)  <u>The Stage of the Proceedings and Amount of Discovery Completed</u>

As noted, the parties have already conducted extensive discovery, evaluated the merits of the case, and participated in three separate mediations. (<u>Id.</u> at 5).

In addition, plaintiff acknowledges that there is a serious risk should the case proceed, both in terms of the outcome of any summary judgment motion, and, if neither party prevails, the outcome of a trial on the merits. (<u>Id.</u> at 18). This carries a risk for plaintiff who would have to show that he worked uncompensated hours and that defendant knew this was happening. While counsel is confident and experienced, the inevitable process of trial and appeal is uncertain in terms of outcome and duration. (<u>Id.</u>)

When counsel has sufficient information to appreciate the merits of the case, settlement is favored. <u>Velez v. Novartis Pharm. Corp.</u>, No. 04 CV 09194, 2010 WL 4877852, at *13

(S.D.N.Y. Nov. 30, 2010); In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537. Thus, this factor favors approval of the settlement.

### (d) Establishing Liability and Damages

The risk of establishing liability also favors settling this dispute. Although plaintiff has expressed confidence in the merits of his claims, defendant has not admitted or conceded fault, liability, or wrongdoing. (Sett. Agr. §§ 5.1(C), 7). Thus, plaintiff's likelihood of success should be evaluated in light of the risks of trial and appeal and the prolonged nature of this type of litigation. Defendant has been well represented by highly competent counsel who would likely pursue all potential defenses and raise multiple issues in the course of the litigation, making the outcome of plaintiff's claims uncertain.

Therefore, the risks of establishing liability and damages weigh in favor of settlement.

### (e) Maintaining the Class Through Trial

Plaintiff acknowledges that there is a risk associated with obtaining and maintaining class certification through trial. (Pl.'s Mem. at 18). If plaintiff were to move for class certification, defendant would likely oppose the motion and move for decertification. Plaintiff must also overcome the more stringent requirement for Rule 23(b)(3) certification. (Id.) This process would require extensive briefing by both parties and inherently involves risk, expense, and delay. (Id.) Since the proposed settlement would eliminate the aforementioned risk, expense, and delay, the Court finds that this factor favors approval.

### (f) Ability of Defendant to Withstand a Greater Judgment

The parties do not address whether defendant Cargo could withstand a judgment greater than what is provided for in the Settlement Agreement. However, this factor standing alone does

not mean that the settlement is unfair. (<u>Id.</u> (citing <u>Frank v. Eastman Kodak Co.</u>, 228 F.R.D. 174, 186 (W.D.N.Y. 2005))).

(g) <u>Range of Reasonableness of Settlement Fund</u>

The Settlement Agreement provides that defendant will pay $200,000. (<u>Id.</u>) Although plaintiff acknowledges that it is possible that the Class could recover a greater amount at trial, plaintiff also recognize the inherent risks of trial. (<u>Id.</u>) Plaintiff contends that based on their calculations, the $200,000 settlement represents 36% of the Class' compensatory damages. (<u>Id.</u> at 14). Plaintiff estimates that the proposed Class is owed $563,000.00 in unpaid wages. (Pl.'s Mem. at 17). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not <u>per</u> <u>se</u> render the settlement inadequate or unfair." <u>Johnson v. Brennan</u>, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting <u>Officers for Justice v. Civil Serv. Comm'n</u>, 688 F.2d 615, 628 (9th Cir. 1982)). When the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable. <u>See</u> <u>In re MetLife Demutualization Litig.</u>, 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

Even absent the risk of establishing damages at trial, the value of the Settlement Fund justifies settling this case. Under the Settlement Agreement, Class Members will each receive their proportionate share of what remains after deducting from the $200,000 total award an award for attorneys' fees, plus reimbursement for litigation costs and expenses, a service award to the named plaintiff of $5,000, and fees for administrative costs. (Pl.'s Mem. at 17). Plaintiff has calculated the Class Members' total losses during the Class Period to be $563,000, while

20

defendant contends that if the rounding policies were ruled unlawful, the most owed would be $126,000.  (Id.)  Under defendant's calculations, the Settlement affords the Class a 100% recovery.  (Id.)  In addition to being a good result for the Class, plaintiff argues that the Settlement does not grant preferential treatment to the Named Plaintiff or to any group, with each member receiving their proportional share of the total.  (Id. at 16)  Nor does the Settlement provide excessive compensation for Class Counsel.  (Id.)

Based on all of these considerations, the Court finds that the total award, including the deductions for a service award, administrative costs, and attorney's fees, is fair and reasonable.

On the basis of the foregoing discussion of the Grinnell factors, the Court finds the proposed settlement fair and reasonable under the circumstances present in this case.

C.  Appointment of the Class Counsel

The Court also respectfully recommends that plaintiff's counsel's motion to be appointed as Class Counsel be granted.  In evaluating the adequacy of Class Counsel, Rule 23(g) requires the Court to consider:  (1) the work done by counsel in investigating the potential claims in the case; (2) counsel's experience in handling similar class actions and other complicated litigation; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will expend to represent the class.  Fed. R. Civ. P. 23(g).  In this case, Louis Ginsberg has extensive experience litigating and settling wage and hour cases and other employment cases, and thus he is well-versed in the applicable law.  (Ginsberg Decl. ¶¶ 23-25).  Moreover, plaintiff's counsel has

performed substantial work in this litigation, identifying, investigating, prosecuting, and settling the claims on behalf of the affected individuals. (Pl.'s Mem. at 2-6).

Accordingly, the Court finds that proposed Class Counsel satisfy the criteria of Rule 23(g), and appoints the Law Firm of Louis Ginsberg, P.C. as Class Counsel to represent the Class Members in this matter.

## D. The Proposed Notice

Pursuant to the Federal Rules of Civil Procedure, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Under Rule 23(e)(1), the "'[c]ourt has virtually complete discretion as to the manner of giving notice to class members.'" In re MetLife Demutualization Litig., 689 F. Supp. 2d at 345 (quoting Handschu v. Special Servs. Div., 787 F.2d 828, 833 (2d Cir. 1986)). In a Rule 23(b)(3) class action such as this, "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" must be provided to the class. Fed. R. Civ. P. 23(c)(2)(B).[9] In Eisen v. Carlisle & Jacquelin, the Supreme Court held that individual notice, as opposed to general published notice, is required by Rule 23(c)(2) for Class Members who are identifiable through reasonable effort. 417 U.S. at 173-76 (holding that "individual notice to identifiable class members is not a discretionary consideration" but rather, is an "unambiguous requirement of Rule 23"); Becher v. Long Island

---

[9] The Rule further provides that, for any class certified under Rule 23(b)(3), the notice must "concisely and clearly state . . . (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Lighting Co., 64 F. Supp. 2d at 177.  Notice is adequate if it "'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 114 (quoting Weinberger v. Kenrick, 698 F.2d at 70).  Notice need not be perfect, but must be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential Class Members.  See Weigner v. City of New York, 852 F.2d 646, 649 (2d Cir. 1988).

Here, the Notice provides an overview of the claims, a definition of the proposed class to be certified, and the date, time, and location of the Fairness Hearing.  (See Proposed Notice,[10] attached as Exhibit B to Ginsberg Decl.).  The Notice also sets forth the options available to Class Members, including what will happen if a Class Member does nothing in response to the Notice, excludes himself or herself from the Settlement, or objects to the Settlement.  Moreover, the Notice also provides an explanation as to how the Settlement Amount is to be allocated to each Class Member, and explains that the estimate is based on their earnings from Cargo and the period in which they provided services.  (Id.)  According to plaintiff, the Notice also provides a sufficient basis to make an informed decision as to whether to participate in the settlement, object, or opt out.  (Id.)

The Court finds that the Notice fairly and adequately advises Class Members of the terms of the Settlement, as well as the right of Class Members to opt out of or to object to the

---

[10] Citations to "Proposed Notice" refer to plaintiff's proposed Notice of Class Action Lawsuit and Fairness Hearing (the "Notice"), attached as Exhibit B to the Ginsberg Declaration.

Settlement, and to appear at the Fairness Hearing. Thus, the Court approves the Proposed Notice.

E. Approval of Service Award for Plaintiff

An "incentive" or "service" award is common in class actions and serves to compensate plaintiffs for their time and effort in the pursuit of litigating the class claim. See In re Nissan Radiator/Transmission Cooler Litig., 2013 WL 4080946, at *15; Capsolas v. Pasta Res. Inc., 2012 WL 4760910, at *9. The general "guiding standard" is, broadly, "the existence of special circumstances including the personal risk (if any) incurred by the plaintiff[] in becoming and continuing as a litigant . . . [or] any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery." Gay v. Tri-Wire Eng'g Solutions, Inc., No. 12 CV 2231, 2014 WL 28640, at *13 (E.D.N.Y. Jan. 2, 2014) (quoting Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).

Courts often grant the named plaintiff in class action cases an enhanced award, either in the form of a flat fee or a multiplied amount of their share of the settlement fund. Compare Capsolas v. Pasta Res. Inc., 2012 WL 4760910, at *10 (awarding a service award of $20,000 to one named plaintiff and $10,000 for the remaining named plaintiff), with Velez v. Majik Cleaning Serv., Inc., 2007 WL 7232783, at *7 (awarding named plaintiff "twice the amount of the award that other class members will receive").

According to plaintiff's counsel, the Named Plaintiff was actively involved at all stages of the litigation, including conferring with counsel, appearing at the three mediations and producing documents; thus, plaintiff seeks a Service Award of $5,000 for the Named Plaintiff. (Pl.'s Mem. at 10). The application for a Service Award "is to be considered separately from the

Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation." (Sett. Ag, §4.3). Further, the "outcome of the Court's ruling on the application for a service payment shall not adversely enforceability of this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval." (Id.) Defendant does not oppose plaintiff's counsel's application for a Service Award. (Id.) The parties have indicated that Class Counsel will petition the Court for the Award at the Fairness Hearing. (Pl.'s Mem. at 10). The Court therefore reserves decision on the fairness of the service award.

F.  Approval of the Requested Attorneys' Fees and Costs

Plaintiff's counsel will seek $66,600 in fees and costs accrued during this litigation; the fee request equals one-third of the total settlement amount. (Pl.'s Mem. at 5). Defendant does not oppose plaintiff's counsel's application for attorneys' fees. (Sett. Agr. § 4.2). The application for attorneys' fees "is to be considered separately" from the Court's consideration of the settlement. (Id.) Moreover, "[t]he outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate [the] Agreement or otherwise affect the Court's ruling on the Motion for Final Approval." (Id.) The parties have indicated that Class Counsel will petition the Court for an award at the Fairness Hearing. (Id.) The Court therefore reserves decision on the fairness of the attorneys' fees.

CONCLUSION

Accordingly, for the reasons stated above, the Court grants plaintiff's motion for preliminary approval of the proposed settlement as articulated in the Settlement Agreement and grants certification of the class for the purposes of settlement. The Court further Orders that: (1)

the Law Offices of Louis Ginsberg, P.C. be appointed as Class Counsel; (2) the proposed Notice of Class Action Lawsuit Settlement be approved; (3) the parties are to provide the name of the Claims Administrator and the procedure for issuing payment to participating Class Members by July 15, 2019; and (4) the Fairness Hearing is scheduled for September 24, 2019 at 11:00 a.m., which is more than 75 days from the date of this Order, as requested by the parties. The Proposed Class will have thirty (30) days after the date the Proposed Notice is mailed to opt-out of or object to the Settlement Agreement. To the extent any Notice is returned or otherwise determined to be undeliverable, such putative Class Members shall be entitled to fifteen (15) days from the date of any subsequent mailing (but no less than the original thirty (30) days) to opt-out or object to the Settlement Agreement.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      July 2, 2019

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York